IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VIVIAN SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 03:04-0038 |
| v. | ) |
| | ) |
| NATIONAL COLLEGE OF BUSINESS | ) Judge Nixon |
| & TECHNOLOGY, and ROBERT | ) Magistrate Judge Knowles |
| LEONARD, in his individual and | ) |
| official capacity, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Pending before the Court is Defendant National College of Business and Technology's Motion for Summary Judgment (Doc. No. 34). For the reasons set forth below, the Defendant's Motion for Summary Judgment is GRANTED in its entirety and the case is DISMISSED.

### I. PROCEDURAL BACKGROUND

Plaintiff Vivian Smith ("Plaintiff" or "Smith") filed this lawsuit on October 29, 2003 against National College of Business & Technology ("the College") and Robert Leonard ("Leonard") (collectively referred to as "the Defendants") in the Circuit Court for Davidson County, Tennessee alleging: 1) race and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination and Employment Act ("AEDA"); 2) breach of contract; 3) tort claims for emotional distress; and 4) wrongful discharge and harassment claims based on race under 42 U.S.C. § 1981.

On January 16, 2004 the College removed this action to federal court, and ten days later filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court granted Defendant's motion with respect to Plaintiff's ADEA and TITLE VII claims, tort claims and breach of contract claim. (Doc. No.11.) Plaintiff's remaining claims are that her termination from employment was illegally motivated by race and that she was subjected to harassment in violation of §1981.

Defendant now moves for summary judgment on the grounds that there is no genuine issue of material fact on Plaintiff's § 1981 claims.

II. FACTUAL BACKGROUND

On March 21, 2001, after having conducted two in-person interviews with Plaintiff, Leonard decided to hire her as a receptionist for the Nashville campus of the College. Plaintiff held her position as receptionist for approximately five months until Defendants terminated her employment on August 10, 2001. Throughout her employment, Leonard was Smith's immediate supervisor.

As the receptionist, Plaintiff's primary functions were to answer the phones and sit at the front desk to greet visitors as they came into the College. Leonard provided Plaintiff with the keys to the building and expected her to open the doors for students, administrative staff and faculty at 8:00 a.m. each morning. This was an important function because at one time, she and Leonard were the only employees with keys to the building.

While employed by the College, Smith was also working as a real estate agent for

2

Case 3:04-cv-00038   Document 72   Filed 03/29/06   Page 2 of 14 PageID #: 732

Century 21 in Nashville. Plaintiff discussed with Leonard her need for some occasional flexibility in her schedule in the middle of the day so that she could perform her real estate duties. Leonard informed Smith that he would work with her, but that she needed to notify him in advance of the time she intended to be away from work. According to Plaintiff, she would get work-study students to cover the phones while she was out in the middle of the day, even though this violated a company policy (derived from federal regulations) which prohibit work-study students from performing receptionist functions.

During her short tenure with the College, Smith was absent or tardy on several occasions, predominately in the last month of her employment. Prior to that, Leonard was satisfied with Plaintiff's job performance. On July 27, 2001, Leonard met with Plaintiff to discuss her attendance problems. During this meeting, Leonard discussed with Smith the importance of her coming to work on time because it was her responsibility to open the building for other employees, students and visitors. Leonard also alerted Plaintiff to several instances in which she arrived at work late or left work early without first notifying Leonard. Specifically, Leonard reprimanded Plaintiff for the following: 1) on Tuesday, July 24, 2001, Plaintiff reported to work at approximately 8:50 a.m., about fifty minutes late;[1] 2) on Thursday, July 26, 2001, Plaintiff left work two hours early without informing Leonard of her need to be away from the office; and 3) on Friday, July 27, 2001, Plaintiff reported to work approximately twenty minutes late.

Subsequent to the disciplinary meeting, on August 10, 2001, Plaintiff came to work thirty

---

[1] Plaintiff disputes that she was ever fifty minutes late, however she does admit that she was at times late, and at times left early or took long lunches. Additionally, Plaintiff admitted later at an unemployment appeal hearing, that she was only disciplined for absences for which she did not seek prior approval.
3

minutes late. Plaintiff's tardiness was not pre-approved, and she did not offer a legitimate excuse for her tardiness. Defendants terminated Plaintiff's employment that day, for the stated reason of poor performance due to her refusal to adhere to the work schedule and her failure to seek prior authorization for absences from work.

Plaintiff is an African-American and claims that she was treated differently than similarly situated white employees. Plaintiff points to Judy Hopton ("Hopton") a white employee at the College, who also worked under the supervision of Leonard, as a comparator. Hopton was not a receptionist like Plaintiff, but instead an admissions representative. Her job duties did not require her to open the building for other staff and students. Ultimately, Hopton was also terminated by Leonard for performance related issues. Leonard hired and fired several black and white employees both before and after Plaintiff. Plaintiff herself said that Leonard instilled fear in everyone around him. Of the current eighteen administrative employees at the College supervised by Leonard, nine are black and nine are white. All but one white employee were hired by Leonard.

Smith also alleges that she was subjected to a hostile work environment, due to harassment because of her race. She refers to several incidents that contributed to this hostile environment. First, she makes several inconsistent statements about Leonard calling students "those people," or "these students." Second, Plaintiff points out an incident where she overheard Leonard refer to a white co-worker's children, whose father was African-American, as little apes. Third, she states that Leonard told her an "old army joke" about a soldier urinating in a coffee pot. Fourth, Smith mentions that on either the first or second day at the College, she found a piece of paper with racial slurs written on it, however, she does not recall what the phrases were.

4

Lastly, Plaintiff claims that Leonard told her to sit at her desk and not take breaks.

### III. STANDARD OF REVIEW

Summary judgment is proper where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1998), (quoting Fed. R. Civ. P. 56(c)). All facts and reasonable inferences to be drawn from those facts must be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 573 (6th Cir. 2003) (en banc).

In order to succeed, "the moving party must show that there is an absence of evidence to support the non-moving party's case and . . . that the evidence is so one-sided that one party must prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, 93 F.3d 230, 233 (6th Cir. 1996). A movant for summary judgment makes a sufficient showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues to support the non-movant's case. See Celotex v. Catrett, 477 U.S. 317, 323 (1986). Once the movant makes this showing, the non-movant must

then direct the Court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. See id.

The non-movant, however, may not rely solely on conclusory allegations in the complaint to defeat a motion for summary judgment, but must come forward with affirmative evidence that establishes its claims and raises genuine issues of material fact. Id. at 324. The "mere possibility" of a factual dispute is not enough. Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986). A genuine issue of material fact is one which, if proven at trial, would lead a reasonable fact finder to find in favor of the non-moving party. Anderson, 477 U.S. at 247-48. The substantive law involved in the case will underscore which facts are material and only disputes over outcome-determinative facts will bar a grant of summary judgment. Id. at 248.

Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted. See Celotex, 477 U.S. at 317. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989) (citations omitted). On the other hand, if this Court determines that a reasonable fact finder would be able to return a verdict for the non-moving party, it must deny summary judgment. See Matsushita, 475 U.S. at 249-50.

## IV. ANALYSIS

### A. Wrongful Termination

Plaintiff claims that she was unlawfully terminated on the basis of her race in violation of 42 U.S.C. § 1981.[2] In order to establish a prima facie case under § 1981, a plaintiff must prove intentional or purposeful discrimination. General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982). The plaintiff may either present direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory treatment. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572 (6th Cir. 2000). Direct evidence, is evidence that the employer terminated a plaintiff because of her race. Id.

If the plaintiff attempts to establish discrimination through circumstantial evidence, courts apply the McDonnell Douglas-Burdine test. Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Com. Affairs v. Burdine, 450 U.S. 248 (1981)). To establish discrimination, the plaintiff must show that 1) she is a member of a protected class; 2) she is qualified for her job and performed it satisfactorily; 3) she suffered an adverse employment action; and 4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. Id. at 572-73. "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated in all

---

[2] § 1981 provides in pertinent part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . ."

7

respects." Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original). The "similarly situated" person must have "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id.

If the plaintiff shows discrimination either through direct or circumstantial evidence, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Johnson, 215 F.3d at 573 (citations omitted). If the defendant can satisfy his burden, then the plaintiff must prove that the defendant's reason is a pretext to hide his unlawful discrimination. Id. To establish pretext a plaintiff must show that "1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action." Id.

Plaintiff has not provided direct evidence of discrimination, therefore she must satisfy the McDonnell Douglas-Burdine test. As an African-American woman, Plaintiff is a member of a protected class. Furthermore, for the purposes of this motion, the Defendants concede that she was sufficiently qualified for her position when hired. Plaintiff was terminated in August 2001, thus she suffered an adverse employment action. The crux of this claim is whether or not Plaintiff satisfies the forth prong.[3]

Plaintiff was replaced by an African-American, who voluntarily terminated her employment soon after. Thereafter another African-American was hired to fill Plaintiff's former

---

[3]For the purposes of this motion only, Defendants concede that Plaintiff has satisfied the first three prongs of the McDonnell Douglas-Burdine test.

8

position.[4]  As she was not replaced by an individual outside of the protected class, Plaintiff must show that she was treated less favorably than a similarly situated individual outside her protected class, in order to establish a circumstantial prima facie case of discrimination.  Johnson, 215 F.3d at 572-73.  Smith compares herself to Hopton, a white employee who worked as an admissions representative.  Plaintiff is unable to show that Hopton was similarly situated.  Mitchell, 964 F.2d 583.  While Hopton did deal with the same supervisor, Plaintiff has provided no evidence that Hopton was subject to the same standards as Plaintiff.  Hopton held a different job position in a different department.  Unlike Plaintiff, Hopton did not have the responsibility to open the door promptly at 8:00 a.m.  As a result, Hopton is not a valid comparator.  Hopton herself was also fired by Leonard for performance related issues, although not particularly having to do with attendance.  This since both women's employment was terminated, it is possible that contrary to Plaintiff's assertions, Hopton was similarly treated by Leonard.  As a result, Plaintiff is unable to satisfy the forth prong of the McDonnell Douglas-Burdine test, and is unable to establish a prima facie case for discrimination or wrongful termination in violation of § 1981.

Assuming arguendo that Plaintiff did establish a prima facie case of discrimination, her case would still fail because Defendants have provided sufficient evidence that the reason for Plaintiff's termination was non-discriminatory.  Defendants fired Plaintiff because she repeatedly refused to adhere to her work schedule.  Smith herself admits that there were times when she was tardy or absent without prior approval.  On July 27, 2001, Leonard met with Smith to discuss her

---

[4]Plaintiff claims that she was replaced by a white person, however she has no evidence to support her claim and her knowledge of the fact is hearsay.  Plaintiff has not in any other way rebutted or called into doubt the veracity of Leonard's deposition statements that an African-American woman was hired to replace Plaintiff.

9

attendance problems. Soon after this reprimand, Plaintiff was again tardy without providing prior notice or valid justification. One of Plaintiff's most important responsibilities was to regularly open the building at 8:00 a.m. for faculty, staff and students, which she failed to do. Thus, repeated tardiness without the required notice, is a sufficiently legitimate, non-discriminatory reason for her termination.

Furthermore, Plaintiff cannot show that this reason was a pretext, because she cannot show that it has no basis in fact. She personally admitted to tardiness and absence. Additionally, she has provided no evidence that the stated reasons were insufficient to explain the Defendants' actions. Plaintiff emphasized how Leonard instilled fear in everyone around him, and also mentioned the frequency with which Leonard fired employees from the College. Consequently it is safe to assume that the reason given by Defendants for Plaintiff's discharge, is sufficient justification for termination by such an exacting boss. Plaintiff's subjective belief that she was discriminated against, without any further evidence, is insufficient to rebut Defendants' reasons for terminating her.

As a result of Plaintiff's failure to state a prima facie claim and because Defendants have legitimate non-discriminatory reasons for her termination, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's claim of wrongful termination in violation of § 1981.

### B. Hostile Work Environment

Plaintiff claims that Leonard's actions subjected her to a hostile work environment in violation of § 1981. In order to establish a prima facie case of hostile work environment due to

racial harassment under 1981,[5] a plaintiff must prove that: 1) she is a member of a protected class; 2) she was subject to unwelcome racial harassment; 3) the harassment was based on her race; 4) the harassment had the effect of unreasonably interfering with her work performance; and 5) the existence of employer liability. Martin v. Boeing-Oak Ridge Co., 244 F.Supp.2d 863, 872 (E.D. Tenn. 2002); Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999).[6]

"Properly applied, [the standard] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as sporadic use of abusive language, [race]-related jokes, and occasional teasing.'" Faragher, 524 U.S. 775, 788 (1998) (citations omitted). Additionally, Plaintiff's subjective belief that Leonard's statements were based on race or were racially offensive is not sufficient to establish that the alleged harassing conduct was race-based. See Stoglin v. Wal-Mart Stores, Inc., No. 398CV30089, 2000 WL 33362001, at *4 (S.D. Iowa Sept. 11, 2000) (holding that an African-American employee's subjective belief that he was treated more harshly than white employees was not sufficient to establish the alleged harassing conduct was race-based); see also Boykin v. Mich. Dep't of Corrections, No. 99-1345, 2000 WL 491512, at *4-5 (6th Cir. April 18, 2000) (holding plaintiff's allegations were facially neutral and therefore not indicative of harassment based on plaintiff's race).

To be actionable under § 1981, the harassment must be sufficiently pervasive or severe to alter the work environment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 20-22 (1993).

---

[5]§ 1981 claims of hostile work environment based on race are analyzed under the same standards as race discrimination claims under Title VII. Jackson v. Quanex Corp., 191 F.3d 647, 658 (6th Cir. 1999).

[6]The Supreme Court found that the burden of proof placed upon a plaintiff claiming racial harassment is the same as that of a sexual harassment plaintiff. See Patterson v. McLean Credit Union, 491 U.S. 164 (1989).

11

Circumstances to be considered in determining whether an environment is hostile or abusive include the frequency of the discriminatory conduct, its severity, whether it was physically threatening, humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Id. at 21. For conduct to constitute a "hostile work environment," the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." Bowman v. Shawnee State Univ., 220 F.3d 465, 463 (6th Cir. 2000). It is not enough that a plaintiff is subjectively offended, instead the conduct must be sufficiently severe or pervasive to create an environment that a reasonable person would find objectively hostile or abusive. Id. A plaintiff must "demonstrat[e] that 'injury resulted not from a single isolated offensive incident, or conduct, but from incidents, comments or conduct that occurred with some frequency.'" Highland v. KFC Nat'l Mgmt. Co., 805 F.2d 644, 649-50 (6th Cir. 1986) (quoting Rabidue v. Osceola Refining Co., 805 F.2d 611, 620 (6th Cir. 1986).

As mentioned previously, Plaintiff is an African-American and therefore a member of a protected class. Plaintiff must then show that she was subject to unwelcome racial harassment and that said harassment was based on her race. Smith refers to several incidents that she claims together produced a hostile work environment causing her severe stress. Defendants argue that this conduct did not constitute harassment and was not based on Plaintiff's race.

First, with regards to Leonard's statements referring to students at the College as "those people," Leonard could have just been telling "those people," meaning the students, to clear out from the reception area. Although Plaintiff claims to have understood it as a reference to the student's race, a reasonable person could have found that he was referring to the students in

12

general. Second, Plaintiff overheard Leonard refer to a co-workers children as little apes. Referring to children as apes is also facially neutral because a reasonable person could find that he was just referring to them as apes because they were misbehaving and disrupting the work environment where they did not belong, and not because they were bi-racial. Third, Leonard told Plaintiff an army joke. This was simply a joke about a soldier urinating in a coffee pot. The Court is unclear exactly why this could be considered racial harassment. Plaintiff's subjective belief that these neutral statements were based on race is insufficient to establish that they were race based. The Court finds that Leonard's "those students," apes and army joke statements are all facially neutral.

Turning to Plaintiff's remaining claims, Plaintiff states that she found a paper with racial slurs written on it on her first or second day of work. While racially motivated, this action is not sufficiently linked to the Defendants. Plaintiff's desk is in the reception area, where students, faculty, staff and visitors have access to it. The Court finds that anyone could have placed this paper on her desk. Smith's subjective belief that Leonard placed it there, without any further evidence, is insufficient to support her claim. Lastly, Plaintiff claims that Leonard told her, and other African-American employees to stay at their desks and not take breaks. Plaintiff admits that she never heard Leonard direct other African-American employees to remain at their desks; instead she relies on hearsay evidence to support this allegation. However, hearsay cannot be considered by the Court on a summary judgment motion. Fed. Rule Civ. P. 56(e); <u>McNeail-Tunstall v. Marsh USA</u>, 307 F.Supp.2d 955, 970 (W.D. Tenn. 2004). Thus, even assuming the facts are as Plaintiff alleges and she was told to stay at her desk and not take breaks, Plaintiff has produced no admissible evidence that Leonard behaved in such a manner as a result of Plaintiff's

13

race. Ultimately the Court finds that Plaintiff has not outlined any treatment by Defendants that is objectively considered racial harassment.

As a result of Plaintiff's failure to state a prima facie claim for hostile work environment under § 1981, the Court GRANTS Defendants' Motion for Summary Judgment as to this claim.

## V.  CONCLUSION

As outlined by the Court, Defendant's Motion for Summary Judgment is GRANTED in its entirety and Plaintiff's remaining claims are DISMISSED.

It is SO ORDERED.

Entered this the __29th__ day of __March__, 2006.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT